**Herman LIVERIGHT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18286.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 10, 1964.

Decided April 29, 1965.

474

Mr. Harry I. Rand, Washington, D. C., with whom Mr. Leonard B. Boudin, Washington, D. C., was on the brief, for appellant.

Mr. Kevin T. Maroney, Atty., Dept. of Justice, with whom Asst. Atty. Gen. J. Walter Yeagley, Mr. David C. Acheson, U. S. Atty., and Miss Doris H. Spangenburg, Atty., Dept. of Justice, were on the brief, for appellee.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and BURGER and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

This appeal is from appellant's second conviction of contempt of Congress,[1] his first conviction on the same charge having been reversed by the Supreme Court in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The evidence shows that, in answer to subpoena, appellant appeared before the Special Subcommittee to Investigate the Administration of the Internal Security Act and Other Internal Security Laws of the Senate Judiciary Committee, where he refused to answer a number of questions related to his alleged past and present relationships with the Communist Party. His refusal to answer was based primarily on the ground that the Subcommittee had no power to inquire into his private affairs and personal beliefs, and also that, since he was employed in the communications industry, the investigation violated his right of free expression.[2]

In his second trial, appellant raised several points which were not decided in this court's prior consideration of his case,[3] one of which is that his subpoena was issued in violation of Senate Resolution 366 of the Eighty-first Congress, Second Session. It appears from the record that the subpoena was issued by the Chairman of the Subcommittee, Senator Eastland, after conferring with Robert Morris, then Chief Counsel for the Subcommittee. According to the testimony of Mr. Morris, none of the other members of the Subcommittee were consulted, with the possible exception of Senator Jenner. It is clear that the Subcommittee itself never decided, or even considered, whether appellant Liveright should be compelled to testify before it.

With regard to the issuance of subpoenas, Senate Resolution 366 provides that "[t]he committee, or any duly authorized subcommittee thereof, is authorized * * * to require by subpenas or otherwise the attendance of

1. 52 STAT. 942, 2 U.S.C. § 192.

2. Appellant also claimed that the Subcommittee had no valid legislative purpose and that by compelling his appearance the Subcommittee was subjecting him to punishment by the legislature in violation of the Bill of Attainder Clause. U.S. Const., Art. 1, § 10, cl. 1.

3. Liveright v. United States, 108 U.S.App. D.C. 160, 280 F.2d 708 (1960), reversed sub nom. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

such witnesses * * * as it deems advisable." In Shelton v. United States, 117 U.S.App.D.C. 155, 160, 327 F.2d 601, 606 (1963),[4] we held that this resolution places in the Subcommittee itself, and not in any individual member, "the power *and the responsibility* of deciding who shall be called." (Emphasis in *Shelton* opinion.) The court's opinion in *Shelton* noted that, by requiring all decisions to compel attendance of witnesses to be made by the Subcommittee, and not by an individual member thereof, the resolution served to protect the right of all persons to be free from unnecessary invasions of their privacy. Failure to comply with the resolution was held to be a valid defense to a prosecution for contempt of Congress under 2 U.S.C. § 192.[5] Thus effect was given to the congressional concern, expressed in the resolution, that proper procedures be followed before any person is compelled to forfeit his fundamental right to privacy.[6]

Appellee in this case would distinguish *Shelton* on the ground that Liveright did not object specifically to his being called before the Subcommittee as Shelton had done.[7] In effect, what we are asked to hold is that, under the theory of the Supreme Court decisions in United States v. Bryan, *supra* Note 5, and McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960), Liveright waived any objection to the subpoena he might have had when he failed to raise it before the Subcommittee. But the *Bryan-McPhaul* rule does not cover the situation here. In both *Bryan* and *McPhaul,* the objection which the Court held should have been raised was one which the witness had fully perceived at the time he appeared.[8] In this case, as in Yellin v.

4. The *Shelton* case involved the same Subcommittee. The subpoena procedures used in that case were similar to those followed here.

5. The *Shelton* decision is not inconsistent with either Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929), or United States v. Josephson, 2 Cir., 165 F.2d 82 (1947), *cert. denied,* 333 U.S. 838, 68 S.Ct. 457, 92 L.Ed. 1118 (1948), cited by appellee in this case. Both of those cases held that a valid subpoena was not an essential element of the offense of "refus[ing] to answer any question pertinent to the question under inquiry" under 2 U.S.C. § 192. Neither held that the invalidity of the subpoena could not be raised as a defense. Compare United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950), where the Court held that presence of a quorum was not essential to the offense, 339 U.S. at 327–330, 70 S. Ct. at 728–730, but that absence of a quorum, if brought to the attention of the committee, might be a valid defense, 339 U.S. at 330–335, 70 S.Ct. at 730–732. And see Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963).

6. See Shelton v. United States, *supra,* 117 U.S.App.D.C. at 161 n. 15, 327 F.2d at 607 n. 15. The Supreme Court has on several occasions spoken of the fundamental importance of the right of privacy. In Sinclair v. United States, *supra* Note 5, 279 U.S. at 292, 49 S.Ct. at 271, 73 L.Ed. 692, the Court stated:

"It has always been recognized in this country, and it is well to remember, that few if any of the rights of the people guarded by fundamental law are of greater importance to their happiness and safety than the right to be exempt from all unauthorized, arbitrary or unreasonable inquiries and disclosures in respect of their personal and private affairs. * * * "

And see United States v. Rumely, 345 U.S. 41, 58, 73 S.Ct. 543, 97 L.Ed. 770 (1953) (Mr. Justice Douglas concurring).

7. Shelton claimed that he was called by mistake, that the Subcommittee had in mind another person named "Shelton."

8. In *Bryan,* as pointed out *supra* at Note 5, the objection was to the absence of a quorum; in *McPhaul,* the witness moved for a directed verdict on the ground that the prosecution had not shown that he actually had access to the records he was ordered to produce. He had not denied access when he appeared before the Committee. Obviously, in both cases, the witness, at the time of his appearance, knew, or had reason to know, of the grounds of the claim he later asserted. Compare Yellin v. United States, *supra* Note 5, where the witness' complaint was that the Committee counsel, instead of the Committee itself, had denied his request for executive session.

United States, *supra* Note 5, there is nothing in the record to suggest that, at the time of his appearance, appellant was aware, or had any reason to be aware, of the improper issuance of his subpoena. In distinguishing *Bryan* and *McPhaul*, the Supreme Court stated in *Yellin*:

> " * * * [T]he Government argues that Yellin's rights were forfeited by his failure to make clear at the time he was questioned that his refusal to testify was based upon the Committee's departure from Rule IV. Whatever the merits of the argument might be when immediately apparent deviations from Committee rules are involved, it has no application here. Yellin was unable, at the time of his hearing, to tell from the actions of the Committee that his rights had been violated. So far as Yellin knew, the Staff Director acted as Congressman Walter's agent, announcing the results of the Committee's deliberations. And so far as he knew, the Committee, when it initially decided to hold a public hearing, did so in accordance with Rule IV. It was not until petitioner's trial, when his attorney for the first time had an opportunity for searching examination, that it became apparent the Committee was violating its rules."

374 U.S. at 122–123, 83 S.Ct. at 1836–1837. (Footnote omitted.)

In light of the Supreme Court's holding in *Yellin* and in view of appellant's obvious reluctance to testify, we cannot conclude that by his mere silence appellant forfeited the procedural safeguards accorded his right to privacy. Therefore, we hold that under the principles announced by the Supreme Court in Yellin v. United States, *supra,* and by this court in Shelton v. United States, *supra,* this conviction must be

Reversed.

BURGER, Circuit Judge (concurring):

I concur in the result reached because reversal is required under the holding of the Supreme Court's *Yellin* decision and our own *Shelton* decision, since Appellant cannot be held to have known that the subpoena was unauthorized when he responded to it. As I read the majority opinion this ground would be unavailable to Liveright if the record revealed facts sufficient to have charged him with knowledge of the infirmity of the subpoena, since he made no timely objection.

Were the present question here for the first time I should indeed hesitate before deciding that a Congressional Resolution relating to the internal workings of its own committees confers enforceable rights on witnesses called before such committees. These resolutions are addressed by the Congress to its own membership for their own internal functioning. However, I am bound to apply these precedents so recently reaffirmed by this court. Shelton v. United States, 117 U.S.App.D.C. 155, 327 F.2d 601 (1963). But I now doubt the wisdom of our going to such lengths to achieve a desired end and to avoid resolution of constitutional questions posed by the conflict between Congress' right to inquire and a person's right to be left alone. To see that this is our announced purpose for reading Congressional Resolutions as vesting rights in witnesses, rather than finding what rights the Constitution provides in the circumstances, one need only scan the line of cases in the past ten years. See, *e.g.,* Shelton v. United States, *supra.* Neither the occasional abuse of the congressional power of investigation nor the neglect of it at times can alter the hard fact that Congress cannot legislate without information. Sooner or later Congress may be expected to refine its procedures and internal restraints beyond the point where judges

can find fault. To me it would make more sense to face the constitutional questions than to indulge in the strained rationalizations which underlie much of the law in this field.